SO ORDERED: September 12, 2018.



Robyn L. Moberly
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CAROLE MARIE HOSKINS ) | CASE NO. 18-1104-RLM-13 |
| ) | |
| Debtor ) | |
| ) | |

### Order Denying Confirmation of Proposed Chapter 13 Plan

Debtor, Carole Maria Hoskins ("Debtor"), appeared in person and by counsel, Richard Shea for an evidentiary hearing on Credit Acceptance Corporation's ("Creditor") objection to confirmation of Debtor's proposed Chapter 13 Plan. Dennis Ostrowski represented the Creditor. Hearing was held on August 14, 2018 and the matter was taken under advisement. Parties were given seven (7) days to file briefs or to tender relevant case law to the Court. This order constitutes findings of fact and conclusions of law as required by Fed. R. Bankr. P. 9014(c) and 7052.

1

## FACTS

Debtor filed this case on February 28, 2018 and is a below median income filer. Debtor is employed at Walmart and her current monthly income is disclosed to be $2,617. Debtor's schedule A/B indicates that she owns no real estate but, at the time of filing, owned two motor vehicles. The Debtor's schedules show that the first vehicle, a 2011 Chevy Aveo, is listed as having a value of $10,000 and is subject to a lien in favor of Bridgecrest Credit Company, LLC ("Bridgecrest") with a debt slightly more than the value of the car. Debtor acquired the Aveo on July 15, 2016 and she testified she was able to make her car payments. The second vehicle, a 2016 Chevrolet Cruze, is listed as having a value of $13,500. Creditor has a lien on the Chevy Cruze and is owed approximately $2,000 more than the vehicle is worth. Debtor purchased and financed the Chevy Cruze just 18 days before she filed the instant bankruptcy. Therefore, the collateral is a "910 claim"[1] under Section 506 of the Bankruptcy Code. Debtor's other property is minimal and Debtor claimed all of her property as exempt.

Debtor testified St. Francis Hospital was garnishing her wages for unpaid medical bills for a year before she filed her bankruptcy petition. According to her schedules, her unsecured non-priority debt totals approximately $19,000 and most of that debt is for medical bills. Debtor testified that she still had possession of both motor vehicles but that the Aveo's engine had "blown up" and the car was no longer working after only one and a half years of ownership . Debtor's amended chapter 13 plan provides that she will surrender the Aveo and thus there could be a deficiency after the vehicle is disposed of which would add to the unsecured debt. Debtor

---

[1] Section 1325(a)(9) is followed by a paragraph that has neither a numerical nor a letter designation and is not substantively related to §1325(a)(9). This paragraph has come to be known as "the hanging paragraph" that follows §1325(a)(9) and provides that "[F]or purposes of [Section 1325(a)(5)], section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor…".

stated that at the time of the filing in February, 2018 there was no public transportation reasonably available to her.

Creditor objects to confirmation of the plan on the grounds the plan was not proposed in good faith as to this creditor. Eighteen days before filing bankruptcy, Debtor financed the 2016 Chevy Cruze at an annual percentage rate of 22.99% for 72 monthly payments of $403.21 with the first payment being due on March 10, 2018. The Debtor filed her chapter 13 case before the first payment came due and has not made any post-petition payments. The Debtor's plan appropriately provides that Creditor's secured claim is the amount listed in Creditor's proof of claim, but proposes to pay Creditor equal monthly installments of $304.56 based on a drastically reduced interest rate of 6.25%. The Debtor's "nonstandard provisions" paragraph of the plan provides that "EMA payments to secured creditors to begin approximately in month 7 of the plan after administrative claims are paid in full". Administrative claims include Debtor's attorney fees of $3900, and the chapter 13 trustee's fees. The Debtor proposes monthly payments of $400 for 60 months.[2]

There are no other secured creditors, as the Debtor is surrendering the Aveo. Debtor cannot "cram down" the debt to the Creditor as the car is a "910 vehicle" having been purchased a mere 18 days before filing of this case. Creditor argues that the Debtor did not file her amended plan in good faith because (1) it is the only secured creditor in this chapter 13 case; (2) the Debtor is paying it a fraction of the contractual interest rate the Debtor agreed to pay when she bought the vehicle less the 3 weeks before the filing; (3) it has never received a full monthly payment for the vehicle and (4) it will only start receiving payments in month 7 after the Debtor's attorney fees are paid.

---

[2] While the plan has not been confirmed, it is presumed that the debtor commenced payments to the trustee within the 30 day period required by §1326(a)(1) and that the trustee is holding several months' worth of funds that she will distribute upon confirmation, thus resulting in the debtor's estimate that the Debtor's attorney fees will be paid in full under the plan in time for the Creditor to start receiving its equal monthly amounts in month 7.

3

## DISCUSSION

11 USC § 1325 (a)(3) requires that a plan be proposed in good faith for the plan to be confirmed and this dispute centers upon that requirement. There is no specific standard test or definition of good faith in the context of filing of a plan. The objecting party must meet the initial burden of proof but it is ultimately the debtor's burden to show the plan complies with all of the confirmation criteria contained in section 1325. *Ed Schory & Sons, Inc. v Francis (In re Francis),* 273 B.R. 87, 91 (B.A.P. 6th Cir. 2002). It is a highly fact sensitive question where the bankruptcy judge considers the totality of the circumstances and makes a determination on a case-by-case basis whether the plan meets §1325(a)(3). *Matter of Love,* 957 F2d 1350, 1355 (7th Cir. 1992) (whether chapter 13 petition had been filed in good faith under §1307(c)) citing *In re Schaitz,* 913 F.2d 452 (7th Cir. 1990) (whether chapter 13 plan was proposed in good faith under §1325(a)(3)) and *In re Smith,* 848 F.2d 813 (7th Cir. 1988)(same). The Seventh Circuit in *Love* concluded that the good faith requirements in filing of the petition and in the filing of the plan are quite similar and are intended to guide the bankruptcy court to consider whether "there has been an abuse of the provisions, purpose or spirit of the Chapter…." *Love, supra* at 1357. The inquiry is whether the filing is fundamentally fair to creditors in a way that is consistent with the Bankruptcy Code. The focus of §1325(a)(3) should be on the facts and behavior relevant to the plan, more so than the prepetition facts and behavior relevant to the filing of the petition. However, even the prepetition behavior can be relevant to the totality of the circumstances in assessing the good faith of the plan under §1325(a)(3). *Id.*

Factors to be considered in a totality of the circumstances evaluation under §1325 (a)(3) are: Does the proposed plan state the debtor's secured and unsecured debts accurately? Does it state debtor's expenses accurately? Is the percentage of repayment of unsecured claims correct? Do any of the deficiencies in the plan amount to an attempt to mislead the court? Do the proposed payments indicate "a fundamental fairness in dealing with one's creditors"? Factors considered in

4

determining whether the proposed plan exhibits fundamental fairness are: Is the motive for and timing of the filing suspect? Is the classification of debt fair to the creditors? Has the debtor filed another bankruptcy petition in recent years? What are the circumstances under which the debts were incurred? Are the debts dischargeable in a chapter 7 case?[3] The list is non-exhaustive. *Smith, supra* at 817-818; *In re Rimgale*, 669 F.2d 426, 432-433 (7th Cir. 1982).

      Creditor has cited two cases in which chapter 13 plans were challenged on good faith grounds where the debtors purchased vehicles less than 3 months before filing their chapter 13 case. In the pre-BAPCPA case of *In Re Henry,* 328 B.R. 529 (Bankr. S. D. Ohio 2004), the court found evidence of questionable prepetition behavior regarding a purchase of several large appliances from a creditor. The plan was of short duration and only paid a very small dividend to unsecured creditors. The debtor gave conflicting testimony on whether he had met with bankruptcy counsel before purchasing a vehicle. The plan proposed to cram down the secured value and the interest rate considerably[4]. Additionally, the debtor had borrowed money from the objecting creditor in excess of what he needed to buy the vehicle so he could pay off another lender on a vehicle he owned, thus giving the debtor a windfall. The debtor also demonstrated a familiarity with the bankruptcy process because he had previously filed a chapter 7 bankruptcy petition.

---

[3] Whether the debt is nondischargeable in a chapter 7 case no longer figures as prominently in the fundamental fairness analysis since BAPCPA amended §1328(a)(2) and made §523(a)(2) and §523(a)(4) type debts nondischargeable in chapter 13 cases.

[4] Prior to 2005, a Chapter 13 debtor could use section 506 to bifurcate the claim and have the bankruptcy court "cramdown" his or her debt by treating the present value of the collateral as a secured claim, while leaving the remaining portion as an unsecured claim and shared, pro rata, with other unsecured creditors. Congress viewed this use of "cramdown" as abusive and unfair to car lenders and other lienholders, so it sought to protect "910-claims" by adding the hanging paragraph to section 1325(a) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). It provides that "[f]or purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a [910-claim]." *In re Dean*, 537 F.3d 1315, 1318 (11th Cir. 2008)

5

The post-BAPCPA case of *In re Blackmon,* 459 B.R. 144 (Bankr. S.D.Fla., 2011) is factually similar to the present case. In *Blackmon,* the debtors purchased the vehicle only 79 days before filing of their bankruptcy petition. The plan proposed to pay the secured vehicle debt in full but at a dramatically reduced rate of interest. The bankruptcy court looked to a Wisconsin case, *In Re Hingiss,* 440 B.R. 787 (Bankr. E.D. Wis. 2010), *rev'd on other grounds*, 463 B.R. 877 (E.D. Wis. 2011), for the guidance that mere speculation of bad faith is insufficient to deny plan confirmation. The creditor in *Blackmon* , however, offered evidence that one of the debtors had met and paid his bankruptcy counsel before purchase of the vehicle, which supported the inference that the debtors purchased the vehicle with the intent of filing a chapter 13 bankruptcy petition. The court reasoned that the debtors negotiated the contract interest rate at the time of purchase in contemplation of filing a bankruptcy in which they would seek to pay a substantially lower interest rate. The court determined that proposal of anything less than payment of the contract interest rate under these circumstances could not be in good faith. 459 B.R. at 147.

Debtor testified to the Court that she had no other way to work other than private transportation at the time of her bankruptcy filing. Her other vehicle had quit working, and is surrendered in this bankruptcy. She had a working wage garnishment order at the time of her bankruptcy, which had been pulling on her paycheck for approximately a year. There was no evidence she had met with bankruptcy counsel prior to incurring the debt, nor was there any evidence she had a particular familiarity with bankruptcy, such as a prior filing. The timing of incurring the debt is highly suspicious, of course. She appears to have completed her bankruptcy schedules accurately. She proposes a 60-month plan even though she could have proposed a 36-month plan as a below median –income debtor. There was no pre-petition bad conduct. This debt to this Creditor is her only secured debt

6

to be paid.  Her unsecured debts are moderate and consist mostly of medical bills, with very little retail credit card debt.

On the other hand, there are factors that suggest that the plan does not meet the requirements of §1325(a)(3).  The Debtor could have filed a chapter 7 case at a much lower attorney fee expense, discharged all of her debts except for the 910 vehicle debt incurred shortly before her filing and reaffirmed on that debt.  The Debtor's schedules and amended plan state there are no secured or priority tax claims.  The claims bar date has passed and no tax authority has filed a proof of claim, so the chapter 13 was not filed to pay tax claims over time.  She owns no real estate so the chapter 13 was not filed to save her house or redeem a house after tax sale. The Debtor would have been afforded the same relief from her unsecured creditors in her chapter 7 as she will receive in her chapter 13 case.  Clearly the alternative of a chapter 13 bankruptcy was intentionally targeted at and only at the Creditor.  Creditor has not received one car payment since the vehicle was purchased and faces the prospect that the interest rate agreed to by the debtors at the time of purchase less than 3 weeks before the case was filed will be reduced by two-thirds.  The Debtor has not dealt with this creditor with the fundamental fairness required by the Code and the Court finds that, unless some adjustment is made to the interest rate being paid, the plan would be proposed in bad faith.

Interest rates on secured debt represent a monetary sum charged by the lender in exchange for the risks it incurs in loaning money to a borrower.  The car loan here was a subprime loan due to the Debtor's poor credit, and the 22.99% contract rate of interest reflects this fact.  Creditor here bore the risk of nonpayment of a loan with a term of 72 months to a debtor with bad credit.  Creditor established a rate of interest it thought was commensurate with that risk, and the Debtor agreed to that interest rate when she purchased the vehicle.

The *Till* [5] case recognized the risks associated with borrowers who are in bankruptcy. In *Till*, the Supreme Court of the United States adopted the "formula approach "to determine the appropriate rate of interest on secured debt in a chapter 13 case. The formula approach takes the national prime rate and adjusts it upward to account for the risk of nonpayment associated with borrowers in bankruptcy. The circumstances of the bankruptcy case, the nature of the security, and the duration of the chapter 13 plan were relevant considerations in establishing the amount of the upward adjustment. 124 S.Ct. at 1961. The *Till* court noted that the resulting interest rate must be "high enough to compensate the creditor for its risk but not so high as to doom the plan". *Id.* at 1962.

The court here is asked to determine whether the plan meets the good faith requirement of §1325(a)(3), not to establish the appropriate *Till* rate of interest on the Creditor's secured claim. But, *Till* is instructive on the risks secured creditors face in chapter 13 cases and a drastic downward adjustment of the contract interest rate is one of them. The Debtor's proposed rate of interest on the Creditor's secured claim is fundamentally unfair to the Creditor given these circumstances, and that unfair treatment is relevant to a §1325(a)(3) analysis. The Debtor proposes to slash the contract interest rate by two-thirds, even though she made the car loan a mere 18 days before she filed her chapter 13 case. She has made no car payments since she bought the vehicle even though she has no other secured debt. The vehicle is highly depreciating collateral. Given the Debtor's lack of maintenance of her previous car, there is no assurance the debtor will maintain Creditor's collateral any better than she did Bridgecrest's collateral. Debtor still poses a grave credit risk and there is no assurance that she will complete her plan or even continue payments to the point when she is starting to pay on this secured debt. These factors result in a finding that the plan was not proposed in good faith and cannot be confirmed, as it currently stands, under §1325(A(3).

---

[5] *Till v. SCS Credit Corp.*, 124 S.Ct. 1951 (2004).

8

As the debtor invites in her brief, the Court would approve confirmation of the plan with a more reasonable and fair rate of interest to be paid to the Creditor to compensate the Creditor, in part, for the risks involved and for waiting until the Debtor's attorney's fees are paid in full before it begins receiving payment under the plan.  The Debtor does not currently have a wage garnishment in place, so her financial situation is somewhat improved, although her credit history is not strong.  The current prime interest rate is 5% and the prevailing view is that interest rates will rise, not decline.  Assuming the Debtor wishes to stay in a chapter 13, she must amend her plan.  The Court believes that a good faith plan would include a proposal to pay Creditor 12% interest on its secured claim and will condition confirmation of an amended plan on that rate.

Accordingly, the Court sustains the Creditor's objection and denies confirmation of the Debtor's amended plan filed on June 20, 2018.  The Court orders the Debtor to (1) file an amended chapter 13 plan, (2) convert the case to chapter 7, or (3) dismiss the case within 21 days of the date of this order.

#             #             #